UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | | |
|---|---|---|
| NORTHERN VALLEY COMMUNICATIONS, LLC, a South Dakota limited liability company, | ) ) ) ) | CIV. 07-1016 |
| Plaintiff, | ) ) | ORDER |
| vs. | ) ) | |
| MCI COMMUNICATIONS SERVICES, INC., d/b/a Verizon Business Services, a Delaware corporation, | ) ) ) ) | |
| Defendant, | ) ) | |
| GLOBAL CONFERENCE PARTNERS, LLC, d/b/a Quality Conferencecall.com, | ) ) ) | |
| Counterclaim Defendant. | ) ) | |
| ──────────────────────── | ) | CIV. 07-4106 |
| SANCOM, INC., a South Dakota corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| MCI COMMUNICATIONS SERVICES, INC., d/b/a Verizon Business Services, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |
| FREECONFERENCING CORP., a Nevada Corporation, and CITRIX ONLINE LLC, a Delaware Limited Liability Company, | ) ) ) ) | |
| Counterclaim Defendants. | ) | |

Plaintiffs, Northern Valley Communications and Sancom, Inc., each brought suit against MCI Communications Services, Inc., d/b/a Verizon Business Services (Verizon), seeking to obtain payment for services they allege they provided to Verizon. Their suits were consolidated by the court. Verizon filed a 13-count counterclaim against plaintiffs and also against Global Conference Partners, LLC, FreeConferencing Corp., and Citrix Online L.L.C. (collectively referred to as provider defendants). Plaintiffs and provider defendants move to dismiss the counterclaims. Verizon opposes the motions.

## FACTUAL BACKGROUND

Viewed in the light most favorable to the nonmoving party, and as is relevant to this order, there are two distinct types of telecommunications providers, local exchange carriers and interexchange carriers. Local exchange carriers provide the service and own the hardware that connects to individual customers in their local area. By contrast, interexchange carriers, commonly known as long distance carriers, own the hardware that connects local carriers, thus allowing an individual to place a call to another individual that is not within the same local network. Local exchange carriers charge fees to long distance carriers in exchange for allowing them access to their networks, and connecting them with local customers.

The rates charged for access services are determined by the published tariff rate, which is filed with and reviewed by the Federal Communications Commission (FCC). Because Northern Valley and Sancom are both South

2

Dakota based, the tariffs are also subject to review by the South Dakota Public Utilities Commission (SDPUC).

Verizon began purchasing tariffed access services from Northern Valley in 2000 and from Sancom in 2005. Northern Valley alleges that Verizon unilaterally stopped paying it for access services on February 1, 2007. Sancom alleges that Verizon unilaterally stopped paying it for access services on June 1, 2007. Plaintiffs thereafter filed suit against Verizon, seeking to collect charges they allege are due under the applicable tariffs.

In its amended answer to each of plaintiff's complaints, Verizon asserts thirteen counterclaims based upon both federal and state law. Verizon alleges that Northern Valley and Global participated in an unlawful scheme to increase traffic, and in turn increase access fees billed to Verizon. Verizon alleges that Sancom participated in a similar scheme with FreeConferencing and Citrix.

The schemes alleged to be unlawful by Verizon relate to teleconferencing services operated by provider defendants. Provider defendants facilitated primarily free conference calling services for their users. Users were given a number to dial, which connected them to a conference call bridge. The conference call participants were then connected to each other at and by the bridge. In determining the localities in which to place its conference call bridges, Verizon alleges that provider defendants purposefully partnered with local exchanges like Northern Valley and Sancom. Because Northern Valley

3

and Sancom are designated as rural competitive local exchange carriers (CLECs), they are eligible to file a higher tariff rate.  The higher revenue gained by Northern Valley and Sancom as a result of the conference calling phone traffic was partly redistributed to provider defendants.  Verizon alleges that this arrangement by plaintiffs and provider defendants, which it refers to as a "traffic pumping scheme," was a deliberate and illegal effort to increase traffic to plaintiffs' exchanges.

## MOTION TO DISMISS STANDARD

In considering a motion to dismiss a counterclaim, the court assumes all facts alleged in the counterclaim are true, construes the counterclaim liberally in the light most favorable to the claimant, and should dismiss only if "it appears beyond a doubt that the [claimant] can prove no set of facts which would entitle the [claimant] to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).  "The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 191, 104 S. Ct. 3012, 3017, 82 L. Ed. 2d 139 (1984).

## DISCUSSION

Verizon responds to the complaints of both Northern Valley and Sancom with a set of thirteen counterclaims.  Although the counterclaims are filed against both plaintiffs separately, they contain nearly identical allegations and the court will therefore analyze them together.  Counterclaims 3, 8, and 13 also allege claims against provider defendants.  In the motions to dismiss Verizon's counterclaims, plaintiffs and provider defendants argue that Verizon's claims are barred by the filed rate doctrine.  Plaintiffs and provider defendants further argue that dismissal of the counterclaims is appropriate in light of the recently issued decision of the FCC in <u>Qwest Communications Corp v. Farmers & Merchants Mutual Telephone Company</u>, Mem Op. & Order, File No. EB-07-MD-001, FCC 07-175 (Oct. 2, 2007).  Plaintiffs and provider defendants also argue that Verizon has failed to state a claim with respect to each individual counterclaim.  Global moves in the alternative to have the case transferred to the FCC pursuant to the primary jurisdiction doctrine.

## I.    Filed Rate Doctrine

Section 203(a) of the Communications Act requires telecommunications carriers to file a tariff with the FCC "showing all charges" and "showing the classifications, practices, and regulations affecting such charges."  47 U.S.C. § 203(a).  Telecommunications carriers cannot "charge, demand, collect, or receive a greater or less or different compensation" for services subject to tariffs. 47 U.S.C. § 203(c).  These provisions are modeled after provisions

contained in the Interstate Commerce Act, and therefore, courts have found that the filed rate doctrine applies to telecommunications carriers.  Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc., 524 U.S. 214, 221-22, 118 S. Ct. 1956, 141 L. Ed. 2d 222 (1998).

" 'Under [the filed rate] doctrine, once a carrier's tariff is approved by the FCC, the terms of the federal tariff are considered to be the law and to therefore conclusively and exclusively enumerate the rights and liabilities as between the carrier and the customer.' " Iowa Network Servs., Inc. v. Qwest Corp., 466 F.3d 1091, 1097 (8th Cir. 2006) (quoting Evanns v. AT & T Corp., 229 F.3d 837, 840 (9th Cir. 2000)) (alteration in original).  "[T]he purpose of the filed rate doctrine is to: (1) preserve the regulating agency's authority to determine the reasonableness of the rates; and (2) insure that regulated entities charge only those rates that the agency has approved or been made aware of as the law may require." Qwest Corp. v. Scott, 380 F.3d 367, 375 (8th Cir. 2004).  The filed rate doctrine also prohibits courts from granting relief that would have the effect of changing the rate charged for services rendered pursuant to a valid tariff.  See Hill v. BellSouth Telecomm., Inc., 364 F.3d 1308, 1316 (11th Cir. 2004).  The filed rate doctrine is equally applicable to tariffs set by state regulatory agencies.  See Teleconnect Co. v. US West Commc'ns, Inc., 508 N.W.2d 644, 647-48 (Iowa 1993).

Verizon argues that the filed rate doctrine is not applicable, in part, because it alleges that plaintiffs did not provide the services contemplated by

6

the tariff.  With respect to Northern Valley, Verizon alleges that the services were provided by Northern Valley's parent company James Valley, and therefore Northern Valley improperly billed Verizon for the provision of access services.  With respect to both plaintiffs, Verizon alleges that the services that plaintiffs received and were billed for did not qualify as the services set forth in the tariffs.

Plaintiffs argue strenuously that the filed rate doctrine is a "harsh" and "strict" rule that cannot be avoided simply by alleging that the tariff does not apply.  Docket 55 at 9.  In <u>Central Office Telephone</u>, the Court explained:

> While the filed rate doctrine may seem harsh in some circumstances, its strict application is necessary to prevent carriers from intentionally misquoting rates to shippers as a means of offering them rebates or discounts, the very evil the filing requirement seeks to prevent.  Regardless of the carrier's motive- whether it seeks to benefit or harm a particular customer-the policy of nondiscriminatory rates is violated when similarly situated customers pay different rates for the same services.  It is that antidiscriminatory policy which lies at the heart of the common-carrier section of the Communications Act.

<u>Central Office Telephone</u>, 524 U.S. at 223.

With respect to Verizon's contention that plaintiffs did not provide the services set forth in the tariff, the court does not find that this type of claim is barred by the filed rate doctrine.  As discussed in <u>Central Office Telephone</u>, the purpose of the doctrine is to be antidiscriminatory, to prevent one customer from receiving a rate different than another.  Verizon's claims are not challenging the validity of the rate, but rather it argues that the arrangement

7

between plaintiffs and provider defendants results in the provision of services not covered by the tariff.  In the context of a motion to dismiss, the court must assume the allegations of Verizon to be true, that it was billed for tariffed services that it did not receive.  A ruling in Verizon's favor would not result in Verizon paying rates different from other entities who obtained services properly categorized under the tariff from plaintiffs.  The court therefore finds that these allegations and claims related to these allegations are not barred by the filed rate doctrine.

Plaintiffs filed suit seeking to recover fees they allege are owed under the tariff.  To recover for amounts charged pursuant to a tariff, "plaintiffs must demonstrate (1) that they operated under a federally filed tariff and (2) that they provided services to the customer pursuant to that tariff." Advamtel LLC v. AT & T Corp., 118 F. Supp. 2d 680, 683 (E.D. Va. 2000).  Under this second element, plaintiffs must show they provided services pursuant to the tariff, which is the converse of what Verizon alleges in its counterclaims.  The court finds that because this determination is appropriately made by the fact-finder with respect to plaintiffs' claims, that further supports the court's finding that the allegations contained within the counterclaims, as discussed above, are not barred by the filed rate doctrine.

Although the filed rate doctrine does not act as a bar to Verizon's claims that it did not receive tariffed access services, the court does find that the filed rate doctrine acts as a bar to Verizon's assertions that the tariffs are "void ab

8

initio" because plaintiffs are not rural CLECs.  Plaintiffs have filed tariffs as rural CLECs, and Verizon's allegations are effectively a direct challenge to the validity of that rate.  Further, there is no indication that plaintiffs' status has ever been questioned by the FCC.  If the court were to invalidate the tariffs with respect to the services provided to Verizon, and subsequently apply a different tariff rate to those services, the result of that determination would be that other long distance carriers would pay a different rate than Verizon.  This is exactly the discriminatory concern that the filed rate doctrine is meant to combat.  See, e.g., H.J. Inc. v. Northwestern Bell Tele. Co., 954 F.2d 485, 489-92 (8th Cir. 1992).  Accordingly, to the extent that Verizon alleges that plaintiffs' tariffs are void because plaintiffs are not "rural CLECs," that argument is dismissed by this court.

## II.    Farmers

Plaintiffs and provider defendants also argue that Verizon's counterclaims are foreclosed by the FCC's recent decision in Farmers.  Verizon does not dispute that the FCC's ruling in Farmers should be given deference by this court pursuant to Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).[1]  In

---

[1] The court notes that the FCC granted an order for reconsideration of the Farmer decision in January of 2008 to allow further development of the factual record.  See Qwest Communications Corp. v. Farmers & Merchants Mutual Telephone Co., Order on Reconsideration, File No. EB-07-MD-001, FCC 08-29 (Jan. 29, 2008).

Farmers, the FCC faced a factual situation similar to the one present in this case. Qwest, an interexchange carrier similar to Verizon, alleged that Farmers, a local exchange carrier similar to Northern Valley and Sancom, violated the Communications Act. Farmers, ¶ 1. Qwest alleged that Farmers undertook a deliberate scheme to increase traffic to its network through agreements with conference calling companies. Id.

A significant difference between Farmers and the plaintiffs in this case, however, is that Farmers was an incumbent local exchange carrier rather than a competitive local exchange carrier. As an incumbent LEC, the tariff rate for Farmers was determined by the rate of return it achieved in previous time periods. The essence of Qwest's complaint was that after establishing the tariff rate during a period of low traffic, Farmers dramatically increased traffic through agreements with the conference calling companies, thus earning an unreasonably high rate of return.

The FCC determined that during the period in question, Farmers had vastly exceeded its prescribed rate of return. Id. at ¶ 25. Despite this finding, the FCC found that Farmers, although it "manipulated the Commission's rules to achieve a result unintended by the rules," it did not act in an unlawful manner. Id. The FCC found that the conference calling companies were appropriately identified by Farmers as end users under the relevant tariff. Id. at ¶ 35. The FCC further found that Farmers' payment of "marketing fees" to

10

the conference calling companies did not affect the status of those companies as customers of Farmers.  Id. at ¶ 38.

Although the issues that confronted the FCC in Farmers are similar to those at issue in this case, the court does not find that the FCC's findings are dispositive at this stage of the litigation.  In Farmers, both parties had the opportunity to conduct discovery, and the FCC relied on the developed record in determining that Farmers had acted lawfully under the tariff.  See id., ¶¶ 30-39.

Further, the claims made by Verizon here differ in some ways from the claims made by Qwest in Farmers.  Verizon argues that pursuant to the tariff at issue in this case, plaintiffs are required to provide a "two-point communication path" to the "end user's premises."  With respect to its claim against Northern Valley, Verizon alleges that Northern Valley's parent company James Valley actually provided some or all of the services, and therefore Northern Valley violated the tariff by not providing a "two-point communication path."

Additionally, Verizon alleges that the tariffs of both Northern Valley and Sancom, which require the provision of services to the "end user's premises," define "end user" as a "customer that is not a carrier."  Verizon alleges that provider defendants, by offering conference calling and other services, qualify as "carriers" under plaintiffs' tariffs.

11

Finally, Verizon alleges that provider defendants are not "customers" of Northern Valley and Sancom as defined under the tariffs because they do not "subscribe" to any services offered under plaintiffs' tariffs.  Verizon acknowledges that a similar argument was made by Qwest before the FCC in Farmers and rejected.  But Verizon specifically alleges in its complaint that the providers "do not" subscribe to any services under plaintiffs' tariffs.  At this stage of the litigation, without a developed record regarding the relationship between provider defendants and plaintiffs, the court must accept Verizon's allegations as true and therefore the situation faced by the FCC in Farmers is distinguishable on this ground as well.  For these reasons, the court finds that the FCC's ruling in Farmers does not mandate dismissal of Verizon's counterclaims.

## III.   Individual Claims

### A.   Fraudulent and Negligent Misrepresentation

Amended counterclaim 1 alleges that plaintiffs are liable for fraudulent and negligent misrepresentation.  Verizon alleges that plaintiffs billed Verizon for services plaintiffs did not provide and at unlawful tariff rates.  In plaintiffs' motion to dismiss, they assert that this claim is barred by the filed rate doctrine.

To state a claim for fraudulent or negligent misrepresentation Verizon must show that plaintiffs:  (1) made a representation of a statement of fact which they knew to be untrue, (2) intended the statement to deceive Verizon

12

and for Verizon to act on the statement, and (3) that Verizon did in fact rely on it to its detriment.  Dahl v. Sittner, 474 N.W.2d 897, 900 (S.D. 1991).  To state a claim for negligent misrepresentation, Verizon must allege that "in the course of business or any other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in their business transaction, without exercising reasonable care in obtaining or communicating the information."  Bayer v. PAL Newcomb Partners, 643 N.W.2d 409, 412 (S.D. 2002).

As discussed above, the court finds that the filed rate doctrine does not bar Verizon's unique allegation that it did not receive services under the tariff.  This is a different situation from that faced by the court in Central Office Telephone, where there was no dispute over whether the tariffed service was actually provided, but rather over the terms of the agreement to provide the services.  Central Office Telephone, 524 U.S. at 224-25.  Assuming all allegations contained in the counterclaim are true, the court finds that Verizon has sufficiently alleged a claim of fraudulent or negligent misrepresentation.  Plaintiffs' motion to dismiss that claim is therefore denied.

### B.    Violation of South Dakota Deceptive Trade Practices Act

Amended counterclaim 2 alleges a violation of SDCL 37-24-6(1), which provides:

> It is a deceptive act or practice for any person to . . . [k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or

misrepresentation or to conceal, suppress, or omit any material
fact in connection with the sale or advertisement of any
merchandise, regardless of whether any person has in fact been
mislead, deceived, or damaged thereby . . .

Any person who is adversely affected by a practice prohibited by SDCL
37-24-6(1) can bring a civil action.  Verizon alleges that plaintiffs billed it for
services plaintiffs did not provide.  Plaintiffs argue that this claim is barred by
the filed rate doctrine because, like the federal claims discussed above, the
filed rate doctrine cannot be expanded by state statutory claims.

The court finds that this claim is outside the scope of the filed rate
doctrine because it alleges that plaintiffs did not actually provide the tariffed
services for which Verizon was billed.  Accordingly, assuming the allegations in
the counterclaim to be true, the court finds that Verizon has sufficiently
alleged a claim for a violation of the South Dakota Deceptive Trade Practices
Act and plaintiffs' motion to dismiss that claim is denied.

### C.    Civil Conspiracy

Amended counterclaim 3 alleges that plaintiffs and provider defendants
conspired to artificially increase the volume of long distance traffic that was
routed to plaintiffs' networks in order to allow plaintiffs to charge an unlawful
rate for services they did not perform.  Under South Dakota law, to prove a
prima facie case of civil conspiracy, the plaintiff must prove the following five
elements: "(1) two or more persons; (2) an object to be accomplished; (3) a
meeting of the minds on the object or course of action to be taken; (4) the

14

commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Setliff v. Akins, 616 N.W.2d 878, 889 (S.D. 2000).

Plaintiffs and provider defendants argue that Verizon has not properly alleged a claim for civil conspiracy because it has not alleged any unlawful acts. A review of the counterclaim, however, demonstrates that Verizon alleges that plaintiffs and provider defendants were involved in an illegal scheme that resulted in charging Verizon for services not provided for in the applicable tariffs. As discussed in more detail above with respect to the Farmers decision, plaintiffs' arguments that the scheme was lawful based upon the FCC ruling are not dispositive at this stage of the litigation. Assuming all facts alleged in the complaint to be true, and construing the counterclaim liberally in the light most favorable to Verizon, the court finds that Verizon has alleged sufficient facts to state a claim under the third amended counterclaim. Plaintiffs' motion to dismiss is therefore denied.

### D. Violation of Federal Tariff

Amended counterclaim 4 alleges that plaintiffs acted in violation of federal law, namely 47 U.S.C. § 203, by billing Verizon for services that plaintiffs did not provide and at unlawful rates. Plaintiffs argue that this claim is barred by the filed rate doctrine because Verizon is asking the court to void plaintiffs' tariffs and apply a different rate. Viewing the counterclaim in the light most favorable to Verizon, the court finds that Verizon has successfully

alleged that plaintiffs billed Verizon for tariffed services that were not provided and therefore Verizon has made allegations sufficient to state a claim for a violation of 47 U.S.C. § 203(c).  Accordingly, plaintiffs' motion to dismiss is denied.

### E.    Breach of South Dakota Communications Act

Amended counterclaim 5 alleges that plaintiffs violated South Dakota law by charging and collecting compensation for services they did not provide in violation of SDCL 49-21-12.2.  For the same reasons discussed with regard to counterclaim 4, plaintiffs' motion to dismiss the counterclaim is denied.

### F.    Violation of 47 U.S.C. § 203(c)

Amended counterclaim 6 alleges that plaintiffs violated 47 U.S.C. § 201(b), which prohibits "unjust or unreasonable rates or practices" by a communications carrier.  Verizon alleges that plaintiffs engaged in the following "unjust and unreasonable practices:" conspiring to artificially increase long distance traffic, fraudulently billing Verizon, and charging an unlawful tariff rate.  Viewing the counterclaim in the light most favorable to Verizon, the court finds that Verizon has successfully alleged a violation of 47 U.S.C. § 201(b).  Accordingly, plaintiffs' motion to dismiss is denied.

### G.    Unjust Enrichment

Amended counterclaim 7 alleges a claim for unjust enrichment against plaintiffs.  "Unjust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to

retain that benefit without paying.' " <u>Hofeldt v. Mehling</u>, 658 N.W.2d 783, 788 (S.D. 2003) (quoting <u>Parker v. Western Dakota Insurors, Inc.</u>, 605 N.W.2d 181, 187 (S.D. 2000)).  Verizon alleges that plaintiffs received a benefit for services they did not provide and for which they charged an unlawful rate.

Plaintiffs argue that because an express contract exists between the parties, the equitable remedy of unjust enrichment cannot be relied upon by Verizon.  In support of this argument, plaintiffs cite <u>Thurston v. Cedric Sanders Co.</u>, 125 N.W.2d 496, 498 (S.D. 1963), which held "[w]here there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or a suit on *quantum meruit.*"  In this case, however, Verizon has alleged that the contract does not cover the services provided by plaintiffs.  Assuming the facts alleged by Verizon to be true, Verizon has successfully alleged that it is entitled to recover damages under a theory of unjust enrichment.  Accordingly, plaintiffs' motion to dismiss the counterclaim is denied.

### H.    Aiding and Abetting

Amended counterclaim 8 alleges that provider defendants aided and abetted plaintiffs in committing tortious conduct.  Provider defendants assert that there is not a civil cause of action for aiding and abetting under South Dakota law.  But, in <u>Chem-Age Industries, Inc. v. Glover</u>, 652 N.W.2d 756, 773 (S.D. 2007), the South Dakota Supreme Court cited with approval Restatement

(Second) of Torts § 876(b) in finding that South Dakota law recognizes a claim for aiding and abetting the breach of a fiduciary duty.  The Restatement provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

Restatement (Second) of Torts, § 876(b) (1977).

For the same reasons discussed with respect to Verizon's counterclaim for civil conspiracy, the court finds that Verizon has alleged sufficient facts to survive provider defendants' motion to dismiss Verizon's claim for aiding and abetting and accordingly that motion is denied.

## I.     Breach of Contract

Amended counterclaim 9 alleges a claim of breach of contract against plaintiffs, which Verizon asserts as an alternative to its claim of unjust enrichment alleged in counterclaim 7.  If the court finds that plaintiffs' tariffs give rise to a contractual relationship, Verizon alleges that plaintiffs are liable for breach of contract because plaintiffs fraudulently billed Verizon for services they did not provide.  Plaintiffs assert that this claim is barred by the filed rate doctrine.  As discussed above, to the extent Verizon alleges that plaintiffs charged Verizon for services not covered by the tariff, and the tariff still creates a valid contractual relationship, Verizon's individual claim is not barred by the filed rate doctrine.  The court finds that Verizon has alleged sufficient facts

that, if true, give rise to its claim for breach of contract.  Accordingly, plaintiffs'
motion to dismiss is denied.

> **J.     Declaratory Relief**

Amended counterclaim 11 seeks a judicial determination that Verizon
should not be required to pay the invoiced fees for services provided in
connection with calls generated by provider defendants.  Verizon also seeks
declaratory judgment that the tariffed access rates charged by plaintiffs are
unlawful.  Plaintiffs argue that this attempt at relief is barred by the filed rate
doctrine.

As discussed above, Verizon's allegations that it did not receive services
under the tariff must be assumed to be true for purposes of a motion to
dismiss.  If Verizon did not receive tariffed services, it has a valid claim for
declaratory relief with respect to plaintiffs' invoices charging Verizon for those
services.  Therefore, plaintiffs' motion to dismiss is denied.

> **K.     Injunctive Relief**

Amended counterclaim 12 seeks injunctive relief against plaintiffs.  For
the same reasons discussed with respect to amended counterclaim 11,
plaintiffs' motion to dismiss the counterclaim is denied.

> **L.     Tortious Interference**

Amended counterclaim 13 alleges that provider defendants tortiously
interfered with an otherwise valid business relationship between Verizon and
plaintiffs.  Verizon alleges that provider defendants initiated the "traffic

pumping" scheme to artificially increase the phone traffic handled by plaintiffs and caused plaintiffs to fraudulently bill Verizon for access services.

To prove a claim for tortious interference, Verizon must show: (1) the existence of a valid business relationship or expectancy between Verizon and plaintiffs; (2) knowledge by provider defendants of the relationship or expectancy; (3) an intentional unjustified act of interference on the part of provider defendants; (4) proof that the interference cause the harm sustained; and (5) damages.  See St. Onge Livestock Co. v. Curtis, 650 N.W.2d 537, 541 (S.D. 2002).

Provider defendants argue that Verizon did not have a valid expectancy in the stability of the usage of plaintiffs' networks, which could wax or wane depending on a number of circumstances outside of the control of any party. Provider defendants further argue that Verizon cannot demonstrate that their acts were "unjustified" under the third element.  Despite the contentions of provider defendants, Verizon has alleged sufficient facts to survive a motion to dismiss.  Assuming all allegations in the counterclaim to be true, provider defendants knowingly initiated a "traffic pumping" scheme which generated traffic which was not covered by the applicable tariff agreement between the parties in an attempt to cause plaintiffs to fraudulently bill Verizon.  These allegations are sufficient to state a claim for tortious interference.  Accordingly, provider defendants' motion to dismiss this counterclaim is denied.

20

**IV.    Primary Jurisdiction**

        In the alternative, Global argues that if the court does not dismiss the

amended counterclaims, it should transfer the amended counterclaims to the

FCC while retaining plaintiffs' collection action.  "The primary jurisdiction

doctrine is premised on a desire for uniform outcomes and on the inherent

advantage in allowing an agency . . . to apply its expert judgment to the issues

in dispute."  Total Telecomm. Services, Inc. v. American Tel. & Tel. Co., 919 F.

Supp. 472 (D. D.C. 1996).

        Courts generally consider four factors in determining
        whether to invoke the primary jurisdiction doctrine:

        (1) whether the question at issue is within the
        conventional experience of judges; (2) whether the question at
        issue lies peculiarly within the agency's discretion or requires
        the exercise of agency expertise; (3) whether there exists a
        danger of inconsistent rulings; and (4) whether a prior
        application to the agency has been made.

American Tel & Tel Co. v. MCI Commc'ns Corp., 837 F. Supp. 13, 16 (D.D.C.

1993).

        Under the circumstances of this case, the court finds that the primary

jurisdiction doctrine does not require this court to transfer jurisdiction over the

proceedings to the FCC.  Verizon's counterclaims present issues that lie within

the experience of this court.  Further, the guidance provided by the FCC in

Farmers will minimize the risk of inconsistent rulings when this court has a

developed record before it.  The court also finds that concerns of judicial

efficiency reinforce this determination.  Because the court must rule on

plaintiffs' collection action, it is more efficient to consider Verizon's counterclaims, especially in light of the fact that there appears to be a substantial overlap in the issues relevant the claims of each party.

Based on the foregoing, it is hereby

ORDERED that plaintiffs' motion to dismiss the amended counterclaims (Docket 43) is denied.

IT IS FURTHER ORDERED that provider defendants' motions to dismiss the amended counterclaims (Dockets 45, 51) are denied.

IT IS FURTHER ORDERED that plaintiffs' and provider defendants' motions for protective orders (Dockets 70, 72) are denied as moot.

Dated June 26, 2008.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

22